# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DURAN, | Case No. 1:18-cv-01580-DAD-SAB |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT; AND CONTINUING INITIAL SCHEDULING CONFERENCE |
| v. | |
| JOHN LOLLIS, et al., | |
| Defendants. | (ECF Nos. 9, 12) |
| | THIRTY-DAY DEADLINE |

John Duran ("Plaintiff"), proceeding pro se, filed this civil rights action against John Lollis and the City of Porterville ("Defendants") alleging he has been deprived of his right to vote and to run for public office. Currently before the Court is Defendants' motion to dismiss and motion for summary judgment.

## I.

## PROCEDURAL HISTORY

On November 16, 2018, Plaintiff filed this action alleging violation of the Federal Voting Rights Act of 1965; and denial of equal protection under the Fourteenth Amendment. (ECF No. 1.) The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 8, 9-6.)

Defendants filed a motion to dismiss and motion for summary judgment on January 7, 2019. (ECF No. 9.) Plaintiff filed an opposition to the motion to dismiss and motion for summary judgment on January 22, 2019. (ECF No. 12.)

## II.

## COMPLAINT ALLEGATIONS

Plaintiff alleges that Defendants denied him the right to run as a write-in candidate in the November 6, 2018 election. (Compl. 2,[1] ECF No. 1.)

Plaintiff had previously filed suit in state court against Defendants alleging unconstitutional at-large elections practices. (Compl. 4.) Plaintiff and Defendants entered into a joint stipulation in case no. VCU 271986 and judgment was entered on December 19, 2017. (Compl. 3.) The parties' stipulation included an agreement that the Defendants would convert to a by-district voting system. (Compl. 4.) Plaintiff contends that around mid-August 2018 the members of the Porterville City Counsel violated the agreement by appointing a sitting at-large councilman to represent the newly created 2nd District of the City of Porterville without providing proper notice to all registered voters of the 2nd District. (Compl. 4.) Plaintiff was denied the ability to participate in the race for City Council. (Compl. 4.)

Plaintiff placed numerous phone calls to the City Clerk's Office and County Elections Office inquiring as to the date to pick up nomination forms to exercise his right to seek public office. (Compl. 5.) The City Council appointed the councilman to the 2nd District seat at a regular city council meeting after asking those in attendance if anyone present had an interest in running for the seat. (Compl. 5.) Plaintiff seeks punitive damages. (Compl. 7.)

## III.

## LEGAL STANDARDS

### A.    Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

party." <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337–38 (9th Cir. 1996). The pleading standard under Rule 8 of the Federal Rules of Civil Procedure does not require " 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. <u>Iqbal</u>, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678. To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. <u>Starr</u>, 652 F.3d at 1216. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." <u>Navarro</u>, 250 F.3d at 732 (citing <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir.1988)).

**B.      Motion for Summary Judgment**

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); <u>Washington Mut. Inc. v. U.S.</u>, 636 F.3d 1207, 1216 (9th Cir. 2011). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. . .." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

## IV.

## DISCUSSION

Defendants argue that Plaintiff lacks standing to bring suit in federal court because he has not suffered an injury in fact. Defendants also contend that Plaintiff's claims in this action are nonjusticiable because they require this court to adjudicate political questions that are best suited

to legislative action. Defendants further assert that they properly filed the legislative vacancy by appointment in lieu of an election pursuant to California law. Defendants move to dismiss Plaintiff's federal voting rights claim on the ground that he has not pled any of the prima facie elements of the claim.

Plaintiff counters that Defendants cannot dispute that his voting rights were violated. Plaintiff argues that he does have standing to assert his rights in this action. Plaintiff contends that the mandates of 52 U.S.C. § 10101 require that citizens are entitled to and must be allowed to vote in elections regardless of their race, color, or previous condition of servitude. Plaintiff asserts that Defendants have conspired to use and abuse the system of district voting for their own purposes and by appointing a councilman to the seat they discriminated against non-English speaking voters and citizens. Plaintiff argues that the city officials should do everything possible to provide the best information to uphold the citizen's constitutional rights.

### A. Motion to Dismiss

#### 1. Standing

Defendants move to dismiss the complaint on the ground that Plaintiff has not alleged an injury in fact to provide him with standing. Defendants contend that Plaintiff is seeking to assert the rights of all voters. Defendants argue that Plaintiff sets forth a generalized grievance and, while purporting that he was denied the ability to run for a city council seat, the gravamen of the compliant is that all voters were disenfranchised when an appointment was made for the open seat.

Plaintiff counters that he does have standing to seek damages. Plaintiff contends that Defendants did not adequately inform the public of their intent to circumvent and steal the election of 2018 under the newly settled voting system and discriminated against non-English speaking voters and citizens.

#### a. Standing Legal Standard

Standing derives "[f]rom Article III's limitation of the judicial power to resolving 'Cases' and 'Controversies,' and the separation-of-powers principles underlying that limitation[.]" Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 125 (2014); see also

DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006) ("the case-or-controversy limitation is crucial in maintaining the 'tripartite allocation of power' set forth in the Constitution"); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) ("standing is an essential and unchanging part of the case-or-controversy requirement of Article III"). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Allen v. Wright, 468 U.S. 737, 750-51 (1984), abrogated on other grounds by Lexmark Int'l, Inc., 572 U.S. 118) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). Standing raises both constitutional and prudential concerns incident to the federal court's exercise of jurisdiction. Coalition of Clergy, Lawyers, and Professionals v. Bush, 310 F.3d 1153, 1157 (9th Cir. 2002).

"The core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan, 504 U.S. at 560. To have constitutional standing to bring suit, a "plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." Lexmark Int'l, Inc., 572 U.S. at 125; accord DaimlerChrysler Corp., 547 U.S. at 342; Lujan, 310 F.3d at 560.

The injury asserted must be "distinct and palpable" and not "abstract" or "conjectural" or "hypothetical." Allen, 468 U.S. at 751 (citations omitted). "In many cases the standing question can be answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases." Id. at 751-52. An allegation that an individual has a right to a particular kind of government conduct and that the government has violated that right by acting differently cannot alone satisfy the requirements of Article III standing. Id. at 754. "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." Lujan, 504 U.S. at 563 (quoting Sierra Club v. Morton, 405 U.S. 727, 734-35 (1972)).

Even where the individual has asserted an injury in fact, it must be shown that the injury is fairly traceable to the conduct of the defendant. Allen, 468 U.S. at 758-59.

Standing also requires that injury asserted must be likely to be redressed by a favorable judicial decision. Lujan, 504 U.S. at 571.

The party asserting federal jurisdiction bears the burden of establishing standing under Article III. DaimlerChrysler Corp., 547 U.S. at 342; Lujan, 504 U.S. at 561.

In contrast, the prudential standing doctrine embodies "judicially self-imposed limits on the exercise of federal jurisdiction[.]" Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004), abrogated on other grounds by Lexmark Int'l, Inc., 572 U.S. 118. Although the Supreme Court has not exhaustively defined the prudential dimensions of the standing doctrine, it has explained that prudential standing encompasses a general prohibition on a litigant raising another person's legal rights, a litigant is barred from adjudication of generalized grievances more appropriately addressed in the representative branches, a litigant's complaint must fall within the zone of interests protected by the law invoked, and the court should not decide matters of domestic relations. Elk Grove Unified Sch. Dist., 542 U.S. at 12-14.

Since standing is an indispensable part of a plaintiff's case, each of the elements must be supported with the manner and degree of evidence that is required at the successive stages of litigation. Lujan, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' " Lujan, 504 U.S. at 561 (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)). Plaintiff must establish standing as to each of his claims. Sanchez, 214 F.Supp.3d at 971 (citing Lewis v. Casey, 518 U.S. 343, 358, n.6 (1996) and Blum v. Yaretsky, 457 U.S. 991, 999 (1982)).

### a. Constitutional Standing

Defendant argues that Plaintiff is bringing a generalized grievance that is insufficient to establish standing. In this action, Plaintiff alleges that he, as well as other citizens, were denied the right to vote and he was denied the right to run as a write in candidate when the City Council appointed a council member to the newly created district. "Whether styled as a constitutional or prudential limit on standing, the Court has sometimes determined that where large numbers of Americans suffer alike, the political process, rather than the judicial process, may provide the more appropriate remedy for a widely shared grievance." Fed. Election Comm'n v. Akins

("Akins"), 524 U.S. 11, 23 (1998).  The Court understands that whether the allegation is a generalized grievance is a prudential concern, but shall first considers whether Plaintiff has pled facts to allege that he has suffered an actual injury.[2]

"The Supreme Court has repeatedly refused to recognize a generalized grievance against allegedly illegal government conduct as sufficient to confer standing." Carroll v. Nakatani, 342 F.3d 934, 940 (9th Cir. 2003); Lujan, 504 U.S. at 573-74.  Federal courts are not publicly funded forums to vent public grievances or to refine jurisprudential understanding.  Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 473 (1982).  Courts are to refrain "from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." Valley Forge Christian Coll., 454 U.S. at 475.  Therefore, where a plaintiff has alleged an injury shared by a large class of other possible litigants, he must allege a distinct and palpable injury to himself to have standing to bring suit.  Warth, 422 U.S. at 501.

Defendants rely on Hein v. Freedom From Religion Found., Inc., 551 U.S. 587 (2007), to argue that Plaintiff's own injury is not distinct from that suffered by other citizens.  In Hein, an organization opposed to government endorsement of religion and three of its members brought a claim under the Establishment Clause challenging the government's use of public funds to promote the President's faith-based initiative.  The plaintiffs argued that they had standing because they paid federal taxes.  Hein, 551 U.S. at 592.  The Court held that it has long been established that payment of taxes is not generally enough to establish standing to challenge action taken by the federal government.  Id. at 593.  The individual taxpayers did not suffer any measurable economic harm.  Id.

The district court considered that the initiative was created entirely within the executive branch by a presidential executive order and found that taxpayer standing is limited to Establishment Clause challenges to the constitutionality of exercises of congressional power under the taxing and spending clause.  Hein, 551 at 595-96.  The district court found the

---

[2] The prudential concerns will be addressed below.

8

plaintiffs lacked standing to challenge the expenditure of the funds.  Id. at 597.  The Seventh

Circuit reversed.  The Supreme Court reversed the Seventh Circuit because a taxpayer's interest

in seeing that federal funds are spent in compliance with the Constitution does not give rise to a

personal injury required for Article III standing.  Id. at 599.  The claim that taxes that have been

lawfully paid into the Treasury are being used unconstitutionally is too generalized and

attenuated to support Article III standing.  Id.  The only recognized exception is for taxpayer

challenges directed only at exercises of power under the Taxing and Spending Clause.  Id. at

604.

In Akins", the Supreme Court held that where the harm is concrete although widely

shared, there can be injury in fact to confer standing.  A group of voters challenged a decision of

the Federal Election Commission ("FEC") not to require the American Israel Public Affairs

Committee ("AIPAC") to meet the same disclosure requirements as political committees.  Akins,

524 U.S. at 14.  As relevant here, the Supreme Court considered whether the plaintiffs had

standing to challenge the FEC's decision not to bring an enforcement action against the AIPAC.

Id. at 18.  In addressing whether the plaintiffs had an injury in fact, the Supreme Court found that

the injury claimed was the inability to obtain information that they believed the statute required

AIPAC to make public.  Id. at 21.  The Court found no reason to doubt the plaintiffs' claim that

the information would be helpful to them.  Id.

The Court distinguished this case from taxpayer standing cases which required a logical

nexus between the taxpayer status and the injury alleged.  The statute at issue in Akins did not

require such a nexus.  Akins, 524 U.S. at 22.  The Court stated that the strongest argument

against standing was that the lawsuit only involved a generalized grievance.  Id. at 23.  The harm

alleged in the suit was one shared in substantially equal measure by all or a large class of

citizens.  Id.  While a generalized grievance is insufficient to confer standing where a widely

shared grievance is abstract and indefinite, if the harm is concrete, even though widely shared,

courts will find standing.  Id. at 23-24.  One example provided is where a large number of voters

suffer interference with voting rights conferred by law.  Id. at 24-25.

Here, the substance of Plaintiff's complaint is that appointing a representative to the City

1  Council deprived himself and other voters of the right to vote. Although Plaintiff has alleged a
2  generalized injury, deprivation of the right to vote that is shared by other voters, he has also
3  alleged a distinct and palpable injury to himself, that he was deprived of the right to vote. The
4  injury alleged is sufficiently concrete to confer standing on a constitutional basis, but this does
5  not end the inquiry into standing for prudential standing concerns must be addressed.

6  **b.   Prudential Standing**

7  A prudential concern of standing "is whether the constitutional or statutory provision on
8  which the claim rests properly can be understood as granting persons in the plaintiff's position a
9  right to judicial relief." Warth v. Seldin, 422 U.S. 490, 500 (1975).[3]

10  "[P]rudential standing is satisfied when the injury asserted by a plaintiff 'arguably [falls]
11  within the zone of interests to be protected or regulated by the statute . . . in question.' " Akins,
12  524 U.S. at 20 (quoting National Credit Union Admin. v. First Nat. Bank & Trust Co., 522 U.S.
13  479, 488 (1998)). Plaintiff has brought this action under the the Voting Rights Act which forbids
14  any practice that would deny or abridge the right of any citizen to vote on grounds of race or
15  color. Garza, 918 F.2d at 765. Plaintiff has not alleged that he was denied the right to vote or
16  run for election based on his race or color nor has he alleged any facts regarding his race or
17  color. Therefore, Plaintiff would not come within the zone of interests protected or regulated
18  under the Voting Rights Act. Akins, 524 U.S. at 20. Plaintiff has not demonstrated that he has
19  standing to bring a claim under the Voting Rights Act.

20  Similarly, Plaintiff alleges a claim under the Equal Protection Clause of the Fourteenth
21  Amendment which prohibits discrimination based on membership in a protected class, Serrano,
22  345 F.3d at 1082, or intentionally treating similarly situated individuals differently with no
23  rational basis for the difference in treatment, Olech, 528 U.S. at 564; Thornton, 425 F.3d at 1167.
24  Here, Plaintiff alleges that he was treated similarly to all other individuals by being denied the
25  right to vote, and he has not alleged that he was a member of a protected class. Plaintiff has
26  failed to allege that he suffered any injury in fact due to a denial of equal protection. Plaintiff

27
28  [3] While defendant's motion often conflates constitutional and prudential standing concerns the real crux of their argument appears to be a prudential standing concern.

has not demonstrated standing to bring an equal protection claim.

Plaintiff also contends in his opposition that non-English speaking voters were discriminated against because it cannot be assumed that every voter fully understands or speaks English.  A prudential principle of standing is that normally a plaintiff must assert his own legal rights rather than those of third parties.  Oregon v. Legal Services Corp., 552 F.3d 965, 971 (9th Cir. 2009); Fleck and Associates, Inc. v. Phoenix, 471 F.3d 1100, 1104 (9th Cir. 2006.)  Plaintiff does not have standing to assert the constitutional rights of third parties.  Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001).

Plaintiff cannot assert the rights of third parties and there are no allegations that Plaintiff himself is a non-English speaker and the pleadings in this matter would preclude such an allegation.  Plaintiff does not have standing to assert the rights of non-English speaking voters.

Plaintiff has failed to demonstrate that he has standing to raise a Voting Rights Act or equal protection claim in this action and Plaintiff lacks prudential standing to bring the claims alleged in this action.  Accordingly, Defendants' motion to dismiss the complaint on that basis is granted.

       2.    Nonjusticiable Political Question

Defendants also move to dismiss the complaint on the ground that it seeks to adjudicate a nonjusticiable political question.  (ECF No. 9-1 at 5-6.)  Defendants contend that Plaintiff refers to the California Elections Code as an unconstitutional ordinance throughout his complaint.  (Id.)  Defendants argue that pursuant to the Elections Code they have the discretion to appoint to fill a vacancy in lieu of election.  (Id. at 6.)  Defendants contend that Plaintiff is asking the Court to decide a political question that lies outside the jurisdiction of the federal court.  (Id.)

In his opposition, Plaintiff states that he is not challenging the formation of the districts or the governing elements or California Election Code.  (ECF No. 12 at 4-5.)  Plaintiff contends that he is merely suggesting that Defendants should have done everything possible to provide the citizens with the best information to protect the citizen's rights rather than appointing a councilmember which violated the public's right to a fair election.  (Id. at 5.)

The Ninth Circuit has held that "when a motion to dismiss attacks 'the substance of the

complaint's jurisdictional allegations,' we treat it as brought under Rule 12(b)(1), even if it was 'improperly identified by the moving party as brought under Rule 12(b)(6).' " Corrie v. Caterpillar, Inc., 503 F.3d 974, 980 (9th Cir. 2007) (quoting St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir.1989). Under these circumstances, the court may consider "affidavits or any other evidence properly before the court." Corrie, 880 F.2d at 201 (quoting St. Clair, 880 F.2d at 201). The presence of a political question deprives the court of subject matter jurisdiction and the court can look beyond the allegations in the complaint to decide whether the complaint presents a political question. Corrie, 880 F.2d at 201.

"The political question doctrine first found expression in Chief Justice Marshall's observation that '[q]uestions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court.' " Corrie, 503 F.3d at 980 (quoting Marbury v. Madison, 5 U.S. 1, 137 (1803)). The Supreme Court subsequently found that "[t]he nonjusticiability of a political question is primarily a function of the separation of powers. "Corie, 503 F.3d at 680 (quoting Baker v. Carr, 369 U.S. 186, 211 (1962)). In Baker, the Supreme Court outlined six independent tests to determine if the court should defer to the political branch on an issue:

> Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Baker, 369 U.S. at 217. If a dispute involves a political question, it lies outside the jurisdiction of the federal court. Corrie, 503 F.3d at 980. The doctrine addresses political questions, not political cases, Baker, 369 U.S. at 217, and the court will not find a political question merely because the decision may have political undertones, Corie, 503 F.3d at 982.

Although Defendants argue that this case presents a nonjusticiable political question, Defendants have not set forth any argument or evidence regarding any test that would be

considered in determining whether this action involves a political question. Defendants' conclusory statement that this case involves a political question is insufficient for the Court to find a political question exists. Accordingly, the Court finds that Defendants have not demonstrated that this action involves a nonjusticiable political question.

### 3. Whether the Allegations in the Complaint are Sufficient to State a Claim

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . .." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

In reviewing the pro se complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

#### a. Section 1983 Claim

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To state a claim under section 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. Long, 442 F.3d at 1185. There is no respondeat superior liability under section 1983, and therefore, each defendant

is only liable for his or her own misconduct.  Iqbal, 556 U.S. at 677.  To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones, 297 F.3d at 934.

Here, Plaintiff brings a claim against John Lollis, the City Manager, and there are no factual allegations regarding any action taken by Mr. Lollis in his individual capacity.  (Compl. 2.)  Therefore, this is a suit brought against Mr. Lollis in his official capacity.  A suit brought against government officials in their official capacity is generally equivalent to a suit against the government itself.  McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986).  Therefore, officials may be held liable if "'policy or custom' . . . played a part in the violation of federal law." McRorie, 795 F.2d at 783 (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985).  The official may be liable where the act or failure to respond reflects a conscious or deliberate choice to follow a course of action when various alternatives were available.  Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989); see Long, 442 F.3d at 1185; Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010).

Further, a local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability.  Monell v. Department of Social Services, 436 U.S. 658, 691 (1978).  Rather, a local government unit may only be held liable if it inflicts the injury complained of through a policy or custom.  Waggy, 594 F.3d at 713.

   i. Voting Rights Act

Plaintiff is alleging a violation of the Voting Rights Act.  The Voting Rights Act, 52 U.S.C. §§ 10101 et seq., was enacted for the broad remedial purpose to eliminate racial discrimination in voting.  South Carolina v. Katzenbach, 383 U.S. 301, 315 (1966); Chisom v. Roemer, 501 U.S. 380, 403 (1991); Luna v. Cty. of Kern, 291 F.Supp.3d 1088, 1099 (E.D. Cal. 2018).  Section 10101 provides that

> All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding.

52 U.S.C. § 10101(a)(1). "The Voting Rights Act, [52 U.S.C. § 10301], forbids the imposition or application of any practice that would deny or abridge, on grounds of race or color, the right of any citizen to vote." Garza v. Cty. of Los Angeles, 918 F.2d 763, 765 (9th Cir. 1990).

The Act is violated " 'if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation' by members of a protected class, 'in that its members have less opportunity than other members of the electorate [1]to participate in the political process and [2] to elect representatives of their choice.' " Gonzalez v. Arizona, 677 F.3d 383, 405 (9th Cir. 2012), aff'd sub nom. Arizona v. Inter Tribal Council of Arizona, Inc., 570 U.S. 1 (2013); see also Luna, 291 F.Supp.3d at 1099 ("The essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by [minority] and [majority] voters to elect their preferred representatives."). While proving a violation of the Act "does not require a showing of discriminatory intent, only discriminatory results, proof of 'causal connection between the challenged voting practice and a prohibited discriminatory result' is crucial[.]" Gonzalez, 677 F.3d at 405 (internal citations omitted).

A Voting Rights Act claim involves a two-step analysis. "First, the court determines whether the challenged voting practice imposes a disparate burden on the electoral opportunities of minority as compared to nonminority voters. Second, the court asks whether the burden works in tandem with historical, social, and political conditions to produce a discriminatory result." Sanchez v. Cegavske, 214 F.Supp.3d 961, 972 (D. Nev. 2016).

Plaintiff alleges a violation of section 10101 of the Voting Rights Act, however, this section only provides for actions instituted by the Attorney General. See 52 U.S.C. § 10101(c) ("the Attorney General may institute for the United States, or in the name of the United States, a civil action or other proper proceeding for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order"). Plaintiff does not have a private right of action under section 10101.

Subsection 2 of the Voting Rights Act "broadly prohibits the use of voting rules to

abridge exercise of the franchise on racial grounds." Katzenbach, 383 U.S. at 316; see also Farrakhan v. Gregoire, 623 F.3d 990, 995 (9th Cir. 2010) (concurring opinion) ("Section 2 provides, without limitation, that any voting qualification that denies citizens the right to vote in a discriminatory manner violates the Voting Rights Act.") Section 2(a) "prohibits all States and political subdivisions from imposing any voting qualifications or prerequisites to voting, or any standards, practices, or procedures which result in the denial or abridgment of the right to vote of any citizen who is a member of a protected class of racial and language minorities." Thornburg v. Gingles ("Gingles"), 478 U.S. 30, 43 (1986).

Subsection 2(b) of the Voting Rights Act "establishes that § 2 has been violated where the 'totality of the circumstances' reveal that 'the political processes leading to nomination or election. . . are not equally open to participation by members of a [protected class] . . . in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." Gingles, 478 U.S. at 43.

The Supreme Court has set forth "three threshold conditions [the Gingles factors] for establishing a § 2 violation: (1) the racial group is 'sufficiently large and geographically compact to constitute a majority in a single-member district'; (2) the racial group is 'politically cohesive'; and (3) the majority 'vot[es] sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate.' " League of United Latin Am. Citizens v. Perry, 548 U.S. 399, 425 (2006); accord Old Person v. Cooney, 230 F.3d 1113, 1120 (9th Cir. 2000). Once these three requirements are met, a plaintiff can prevail on a Voting Rights Act claim only if "based on the totality of the circumstances, . . . the challenged voting practice results in discrimination on account of race." Gonzalez, 677 F.3d at 405 (quoting Farrakhan v. Washington, 338 F.3d 1009, 1017 (9th Cir.2003). In this inquiry, the court is to consider "a non-exhaustive list of factors set out in the legislative history to the Voting Rights Act as well as cases interpreting it." Old Person, 230 F.3d at 1120.

Here, Plaintiff's complaint is devoid of any allegations that Defendants caused a disparate burden on the electoral opportunities of minority as compared to nonminority voters. The complaint alleges that the defendants disenfranchised every voter of the 2nd District by

1 appointing an individual to the council seat rather than having an election. (Compl. at 4-5, 7.)

2 Plaintiff has failed to state a cognizable claim under the Voting Rights Act.

4     ii.   Equal Protection Clause

5       The Equal Protection Clause of the Fourteenth Amendment prohibits denying any person

6 the equal protection of the laws. U.S. Const. amend. XIV, § 1. There are two ways for a

7 plaintiff to state an equal protection claim. A plaintiff can state a claim for violation of the Equal

8 Protection Clause, by showing "that the defendant acted with an intent or purpose to discriminate

9 against him based upon his membership in a protected class." Serrano v. Francis, 345 F.3d 1071,

10 1082 (9th Cir. 2003). Intentional in this context means that the defendant acted, at least in part,

11 because of the plaintiff's membership in a protected class. Serrano, 345 F.3d at 1082.

12       Alternately, the plaintiff can state a claim by alleging that he was intentionally treated

13 differently than similarly situated individuals and there was no rational basis for the difference in

14 treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Thornton v. City of St.

15 Helens, 425 F.3d 1158, 1167 (2005). To state an equal protection claim, the plaintiff must allege

16 that defendants acted with the intent to discriminate. Comm. Concerning Cmty. Improvement v.

17 City of Modesto, 583 F.3d 690, 703 (9th Cir. 2009) (protected class); Rosenbaum v. City & Cty.

18 of San Francisco, 484 F.3d 1142, 1152 (9th Cir. 2007) (similarly situated individuals); Lacey v.

19 Maricopa Cty., 693 F.3d 896, 920 (9th Cir. 2012) (same).

20       To state a claim for violation of the Equal Protection Clause, the complaint must contain

21 sufficient factual allegations "that the defendant acted with an intent or purpose to discriminate

22 against him based upon his membership in a protected class." Serrano, 345 F.3d at 1082.

23 Plaintiff's complaint is devoid of any allegations that he is a member of a protected class or that

24 he was discriminated against based on his membership in a protected class.

25       Alternately, Plaintiff can state a claim by alleging that he was intentionally treated

26 differently than similarly situated individuals with no rational basis for the difference in

27 treatment. Olech, 528 U.S. at 564. Plaintiff has not alleged that he was treated differently than

28 any other similarly situated individuals. In fact, Plaintiff alleges that the conduct of Defendants

1  similarly affected all voters. Plaintiff has failed to state an equal protection claim.

2      For the reasons discussed above, Defendants' motion to dismiss is granted.

3      4.    Remedy

4      Defendants also contend that, while the prayer for relief is vague, Plaintiff has only

5  alleged that he is seeking punitive damages which are not available against a public entity.

6  Plaintiff counters that he is entitled to seek damages under the Voting Rights Act.[4]

7      In his prayer for relief, Plaintiff seeks punitive damages. (Compl. 7.) As a matter of law,

8  a public entity cannot be sued for punitive damages under section 1983. City of Newport v. Fact

9  Concerts, Inc., 453 U.S. 247, 271 (1981); Neveu v. City of Fresno, 392 F.Supp.2d 1159, 1183

10  (E.D. Cal. 2005). Plaintiff cannot seek punitive damages in this action against the City of

11  Porterville or Mr. Lollis in his official capacity. Plaintiff's punitive damage claims against the

12  City of Porterville and Mr. Lollis in his official capacity are dismissed without leave to amend.

13      Plaintiff argues in his opposition that all citizens are entitled to and should be allowed to

14  vote at all elections. However, Plaintiff has not sought injunctive relief in this action. Should

15  Plaintiff choose to file an amended complaint, Plaintiff shall clearly set forth the remedy that he

16  is seeking in this action.

17  **B.    Summary Judgment**

18      Defendants move for summary judgment on Plaintiff's Voting Rights Act claims.

19  Defendants seek for the Court to find that Plaintiff is unable to allege a claim under the Voting

20  Rights Act.

21      To the extent that Defendants argue that Plaintiff cannot prevail on a challenge to the

22  California Elections Code based on appointment of an individual to the City Council seat,

23

---

24  [4] 52 U.S.C. § 10302(a) provides that "the Attorney General or an aggrieved person" can institute "a proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." Section 10307 sets

25  forth the prohibited acts, which as relevant here, would be failing or refusing to permit a person to vote who is entitled to vote. 52 U.S.C. § 10307(a). Section 10308 sets from the civil and criminal sanctions for violations of

26  section 10307, and provides that the Attorney General can institute a civil action. 52 U.S.C. § 10308(d). While Plaintiff brings this action to enforce the Voting Rights Act, his private cause of action arises under the fourteenth or fifteenth amendments making this a section 1983 claim. See Katzenbach, 383 U.S. at 337 (the Voting Rights Act is

27  a valid means for carrying out the commands of the Fifteenth Amendment); Chisom v. Roemer, 501 U.S. 380, 383 (1991) ("The preamble to the Voting Rights Act of 1965 establishes that the central purpose of the Act is '[t]o

28  enforce the fifteenth amendment to the Constitution of the United States.' "

1 Plaintiff is not challenging the Election Code. Defendants argue that Plaintiff is unable to state a

2 claim for violation of the Voting Rights Act, but have presented no evidence relevant to this

3 claim on summary judgment. The parties' both argue the facts of the prior state court action in

4 which they reached a settlement.

5 In the state court action, the settlement required the City to change the manner in which

6 council members were elected. The City adopted voting districts for all city council seats.

7 However, this is not material to the current action. The only material facts here relate to how the

8 council member was selected for the new 2nd District seat. While Defendants present evidence

9 that only one candidate filed qualified nomination papers and a declaration for candidacy for the

10 office (Decl. of John Lollis ¶¶ 4, 5), Plaintiff states that he made numerous calls to the City

11 Clerk's Office and the County Elections Office inquiring as to the date that he could pick up

12 nomination forms to run for the seat. (Compl. 5.) Given the early stage of these proceedings, the

13 Court finds that a material dispute of fact exists as to whether Plaintiff was denied the

14 opportunity to file a nomination form and run for the City Council seat.[5]

15 Further, while the state court judge issued a proposed ruling, it was never adopted. Since

16 there was no final judgment on the merits of Plaintiff's claim that he was deprived of his federal

17 voting rights, there would be no preclusive effect. See Stewart v. U.S. Bancorp, 297 F.3d 953,

18 956 (9th Cir. 2002) (Res judicata applies where there is: "(1) an identity of claims; (2) a final

19 judgment on the merits; and (3) identity or privity between parties."). Therefore, the Court

20 declines to address the facts and objections regarding the state action. To the extent that Plaintiff

21 is contending that the election violated the settlement agreement, this Court would not have

22 jurisdiction to adjudicate the prior state court settlement.

23 Defendants seek to have the Court find that the appointment of Milt Stowe to fill the

24 vacant seat for the 2nd District was proper under the California Elections Code; and therefore,

25

26 [5] The Court does not preclude Defendants from filing a motion for summary judgment should Plaintiff be able to
state a claim and after discovery has been obtained. Plaintiff is advised that at a later stage of the proceedings he

27 will be required to produce evidence of when he attempted to obtain the nomination forms to avoid summary
judgment. Further, Plaintiff is advised that should a motion for summary judgment be filed, he is required to
comply with the requirements of Federal Rule of Civil Procedure 56. If there is no evidence submitted to create a

28 genuine issue of material fact, the Court will not hold a hearing for the purpose of presentation of evidence.

grant summary judgment on the Voting Rights Act claim. The Court declines to do so at this stage of the proceedings. Defendants' motion for summary judgment is denied.

### C.     Leave to Amend

Defendants seek for the complaint in this action to be dismissed without leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). In this instance, the Court is unable to find that there are no facts that Plaintiff could allege to state a cognizable claim. Therefore, leave to amend shall be granted.

## V.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim for violation of his federal rights and Defendants' motion to dismiss is granted. At this stage of the litigation, the Court shall deny Defendants' motion for summary judgment. Plaintiff shall be provided with an opportunity to amend his complaint.

Plaintiff is advised that his amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . .." Twombly, 550 U.S. at 555 (citations omitted). Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey, 693 F.3d at 927. Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1.     Defendants' motion to dismiss is GRANTED;

2.     Defendants' motion for summary judgment on the Voting Rights Act claim is

1       DENIED;

2     3.     Plaintiff's request for punitive damages is DISMISSED without leave to amend;

3     4.     Plaintiff shall file an amended complaint within thirty days of the date of entry of

4         this order;

5     5.     The initial scheduling conference set for February 26, 2019, is CONTINUED to

6         **April 30, 2019, at 9:30 a.m.** in Courtroom 9; and

7     6.     Failure to file an amended complaint in compliance with this order will result in

8         dismissal of this action for failure to comply with a court order.

IT IS SO ORDERED.

Dated:   **February 19, 2019**

UNITED STATES MAGISTRATE JUDGE